MEGAN A. MAITIA (Bar No. 285271)
megan@summaLLP.com
JENNIFER L. WILLIAMS (Bar No. 268782)
jenn@summaLLP.com)
SUMMA LLP
1010 Sycamore Avenue, Unit 117
South Pasadena, California 91030
Telephone: (213) 260-9455/52/56
Facsimile: (213) 835-0939

Attorneys for Defendant
DOUGLAS J. CHRISMAS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DOUGLAS J. CHRISMAS,<br><br>　　　　Defendant. | Case No. 2:21-CR-00127-MCS<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT 404(B) EVIDENCE; OPPOSITION TO A REQUEST FOR A JUDICIAL INQUIRY (DKT. 144)**<br><br>**Judge:**　Hon. Mark C. Scarsi<br>**Hearing:**　TBD<br><br>**Trial**:　May 28, 2024<br>**Courtroom**: 7C |

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a bankruptcy embezzlement case about three transactions in 2016. At the time, Mr. Chrismas was debtor-in-possession of the ACE Gallery bankruptcy estate and oversaw ACE Gallery's business operations. On March 30 and April 1, 2016, Mr. Chrismas used Gallery money to pay rent on the building that housed ACE Museum. At trial, the jury will decide a one question: when Mr. Chrismas used Gallery money to pay the Museum rent in March and April 2016, did he knowingly and fraudulently embezzle or appropriate property belonging to the Gallery bankruptcy estate?

One week from trial, the Government is trying to make this case about an unrelated transaction that will not help the jury decide this factual question: the December 2023 sale of the Tuna Canyon property that Mr. Chrismas owned outright (in his personal capacity since 1970), subject to the enforceable liens on the property. (Dkt. 144.) The Government also seeks a judicial inquiry into whether defense counsel has a conflict because Mr. Chrismas used the untainted sale proceeds to pay a security deposit in defense counsel's client trust account. The Government's motion is wrong on the law and the facts and should be denied.

### A. THE GOVERNMENT'S MOTION IS BASED ON MISLEADING FACTS AND WITHOUT LEGAL SUPPORT

In moving to revoke Mr. Chrismas's bond, the Government told the Court that Mr. Chrismas "did in fact hide" the December 2023 sale of the Tuna Canyon property from the ACE Gallery bankruptcy estate; that "hiding the sale" would allow him to keep the proceeds "rather than surrendering" them to ACE Gallery "consistent with" the civil judgment; and the sale of the Tuna Canyon property was a transfer of "debtor assets," that is, assets belonging to ACE Gallery, in violation of 18 U.S.C. § 152. (Dkt. 120 at 4-5, referencing ECF page numbers, with the Notice of Electronic Filing dated May 7, 2024 at approx. 10:20 p.m.) The Government reinforces this narrative in the pending 404(b) motion, arguing that Mr. Chrismas sold the Tuna Canyon property without alerting the

estate and without "pay[ing] back some of what he had previously stolen from ACE Gallery[,] as reflected, at least by the $14 million judgment against him."[1] (Dkt. 144 at 3.)

The Government's argument is based on misleading reports of the facts and the law. According to an FBI interview memo dated May 7, 2024 (the same day as the Government's Dkt. 120 filing),[2] the Government interviewed Carolyn Dye (Sam Leslie's lawyer) telephonically, and she explained: (1) Team Leslie knew of the Tuna Canyon property owned by Chrismas, and (2) and to collect the Tuna Canyon sale proceeds, she'd have to first do a debtor exam and then follow "debt collection proce[dures]" under the California Code of Civil Procedure. Maitia Decl. ¶ 2, Exhibit A. According to a May 9, 2024 email between AUSA Makarewicz and Dye, Sam Leslie was "pushing" her to investigate Mr. Chrismas's assets, but she did not pursue it. Maitia Decl. ¶ 3, Exhibit B. Nothing in the Government's discovery indicates that any witness has ever described the sale as "hidden," that Mr. Chrismas was obliged to voluntarily "surrender" sale proceeds to the estate," or that doing so was "consistent with" or required by the judgment. Indeed, Dye's interview memo indicates the opposite, explaining that other liens on the Tuna Canyon property would be senior to any liens ACE Gallery *could have* on the property (but *did not have* because the Gallery never pursued a lien). At no time does Dye or any other witness describe the Tuna Canyon sale proceeds as "debtor assets," Maitia Decl. ¶ 4, nor could they consistent with the law.

---

[1] The $14 million judgment in favor of Plan Agent Sam Leslie against Mr. Chrismas was based on a civil motion for summary judgment on conversion and breach of fiduciary duty claims. *See* Case No. 2:22-cv-01265-PA, Dkt. 2, 9. These civil claims are distinct from "stealing," a phrase the Government repeatedly uses, and distinct from "embezzlement," the crime charged here. This judgment was not based on jury findings, the reasonable doubt standard, or Mr. Chrismas's constitutional rights to confront witnesses and to remain silent, and the judgment amount is not a proxy for financial "loss" to the ACE Gallery bankruptcy estate.

[2] The Government produced this interview memo a week later, on May 14, 2024, after moving (successfully) to revoke Mr. Chrismas's bond and after seeking (unsuccessfully) to have Mr. Chrismas indefinitely detained based on the same misleading argument.

The Government seems to concede this point, agreeing that property interests are defined by state law, Dkt. 144 at 13-4 n.6 (citing cases); and because Sam Leslie never sought to enforce the $14 million judgment before Mr. Chrismas sold the Tuna Canyon property, his avenue to recover the sale proceeds is through a state civil action under the California Uniform Fraudulent Transfer Act (UFTA), Cal. Civ. Code § 3439.04. Dkt 144 at 15 n. 7, citing *Fid. Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841 (2009). Even then, to recover under the UFTA, a creditor must prove that "the transfer puts beyond her reach property she otherwise would be able to subject to the payment of her debt." 179 Cal. App. 4th at 841 (cleaned up). Taking this full circle, Sam Leslie would be hard pressed to satisfy this civil standard because he never took the necessary steps (starting with a debtor's exam) to enforce his judgment against Mr. Chrismas. *See* Cal. Civ. P. § 695.010 *et seq*. (Part 2, Title 9, Civil Actions, Enforcement of Judgments).

     Comparing ACE Gallery's relationship with Mr. Chrismas to that of spouses in divorce proceedings (*see* Dkt. 144 at 8) does not change the analysis. *In re Marriage of Walter* deals with a husband who used community property to pay taxes on real estate he owned separately; the court affirmed a judgment that required the husband to reimburse the community for the wife's share in the used funds. 57 Cal. App. 3d 802, 805 (1976). To the extent these marital property principles apply here, the application ends with the Gallery's $14 million judgment against Mr. Chrismas, which presumably accounts for the Gallery funds that Mr. Chrismas used to pay the Tuna Canyon property taxes. *See In re Marriage of Walter*, 57 Cal. App. 3d at 806-807 (granting wife a monetary judgment for the amount owed, not an interest in the husband's separately owned real estate).

     Finally, the Government's position that Mr. Chrismas "lied" during the property sale, Dkt. 144 at 7-8 and n.5, falls short. Mr. Chrismas's disclosure that he worked for ACE Collection Development for the past 26 years is obviously a general description of his work in the field under the trade name "ACE," and there is zero evidence that this altered Sam Leslie's ability to collect on the judgment. Mr. Chrismas indeed contacted a creditor directly (rather than through the escrow agent), but there is nothing wrong with this, nor is

there any evidence that Mr. Chrismas failed to comply with any enforceable lien on the property. And Mr. Chrismas indeed purchased and then sold the property as a "single man," because the property was and had always been his separate property (not community property he jointly owned with his wife).

### B. THE SALE OF THE TUNA CANYON PROPERTY IS NOT ADMISSIBLE UNDER FRE 404(B) AND 403

Once the Government's narrative falls apart—Mr. Chrismas did <u>not</u> hide the Tuna Canyon property sale and had no duty to use the sale proceeds for the $14 million judgment—the Government's 404(b) argument also falls apart. Dkt. 144 at 8-9 (arguing the four 404(b) factors).

<u>First</u>, the Government argues the Tuna Canyon property evidence proves a "material point, namely, defendant's motive, knowledge, intent, and/or lack of mistake." But this "generic" notice is insufficient to comply with 404(b) (as defense counsel has already notified the Government). Maitia Decl. ¶ 5, Exhibit C. *See* Fed. R. Evid. 404(b)(3); see also Committee Notes, 2011 Amendment (the notice provision requires the prosecution to "not only identify the evidence it intends to offer…but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose."). Notice of a "general nature" of the evidence is not enough; the prosecution must provide "the specific act the evidence would tend to prove" and an explanation of "the relevance of the evidence for a non-propensity purpose." *Id*.

For example, what, specifically, is the sale offered to prove? How is Mr. Chrismas's sale in 2023 *of his own personal untainted property* related to his knowledge or intent in 2016 when he made transfers as the debtor-in-possession of ACE Gallery? How is Mr. Chrismas's use of his untainted personal money in 2023 evidence of his "motive" in conducting the transactions in 2016? That Mr. Chrismas did not intend to benefit the estate in 2023 (after he had been forced out of the Gallery he built and railroaded through a decade of civil litigation and promises of criminal prosecution) does not tend to prove in any way that he did not intend to benefit the estate when he made transfers as the head of

the Gallery in 2016. Beyond making broad, generic (and improper) propensity pronouncements, the government fails to establish the relevance of the 2023 transaction.

<u>Second</u>, the Government argues the evidence is "self-evidently not remote in time" but ignores that the December 2023 Tuna Canyon transaction was nearly eight years after the March and April 2016 transactions charged here, and nearly eight years after Mr. Chrismas stopped operating the Gallery as debtor-in-possession (the sole basis subjecting him to 18 U.S.C. § 153).

<u>Third</u>, the Government argues that the "pertinent transactions will be corroborated by documentary evidence" produced in discovery, but the Government has not changed its witness list and therefore cannot introduce any testimony by witnesses with percipient knowledge.[3] Maitia Decl. ¶ 8.

<u>Fourth</u>, the Government argues that the evidence is "quite similar to the charged conduct: in each instance, the defendant hid (or embezzled) assets from the bankruptcy estate." Indeed, 404(b) conduct need not be identical to the charged conduct. But here, the December 2023 property sale and the 2016 charged transactions are completely different. To be clear, to convict Mr. Chrismas at trial, the jury must find beyond a reasonable doubt that the money transferred on March 30 and April 1, 2016 was "part of" the ACE Gallery bankruptcy estate; Mr. Chrismas had "access to the property as a trustee or custodian" of the bankruptcy estate; and he "knowingly and fraudulently embezzled, spent, transferred, or appropriated to the Defendant's own use property belonging to the bankruptcy estate." Dkt. 45 at 42 (Jury Instruction 31.) None of these elements were at play in December 2023, when Mr. Chrismas was neither a trustee nor a custodian of ACE Gallery, and the Tuna Canyon property was his *personal* property not subject to any lien or encumbrance by the ACE Gallery bankruptcy estate.

---

[3] How the Government obtained these documents will be addressed in a forthcoming motion to dismiss for prosecutorial misconduct. Short of dismissal, such motion will also serve as an independent basis for the Court to exclude this purported 404(b) evidence.

The Government separately argues that the Tuna Canyon property evidence also rebuts "a primary defense theory," that Mr. Chrismas was motivated to help ACE Gallery when he caused the March 30 and April 1, 2016 transfers. Dkt. 144 at 9. But the defense theory is <u>not</u> a general, perpetual desire for Mr. Chrismas to help ACE Gallery, years after Sam Leslie took over and it became clear that Leslie was liquidating (rather than reorganizing) the business. Rather, the defense theory is that in causing the March and April 2016 transfers—when Mr. Chrismas was debtor-in-possession and responsible for ACE Gallery's business operations—he did not knowingly and fraudulently embezzle from the ACE Gallery bankruptcy estate because he intended the payments to support the Museum lease for the benefit and use of the Gallery.

Finally, the Government argues that the Tuna Canyon property evidence is not unduly prejudicial under Rule 403 because it "simply provides good evidence of defendant's intent." Dkt. 144 at 10. This is not evidence of Mr. Chrismas's intent but a backdoor attempt to admit the $14 million bankruptcy judgment, Mr. Chrismas's bond violation, and general character evidence. None of this evidence admissible, and all of it is unduly prejudicial, converting this case into a series of mini trials of uncharged conduct and risking distracting the jury from its central task, whether the March and April 2016 transactions amount to embezzlement under 11 U.S.C. § 153.

### C. NO CONFLICT INQUIRY IS NEEDED.

If the Court denies the Government's 404(b) motion, then there is no need for the Court to make a judicial inquiry about a potential conflict. The December 2023 sale of the Tuna Canyon property will be inadmissible, and the fact that Mr. Chrismas used sale proceeds to pay defense counsel will be irrelevant. None of the Government's authority (discussed above) supports the argument that the Tuna Canyon property sale "may itself constitute a new crime," Dkt. 144 at 13-14, n.7, and there is no basis to find that the sale proceeds were "tainted" from criminal conduct. *Id*. at 15. As for third-party D.K., who works for Mr. Chrismas, the Government has not served her with a May 28, 2024 trial

subpoena, D.K. is not on the Government's witness list, and defense counsel does not represent D.K. as a witness in this trial. Maitia Decl. ¶ 8.[4]

Defense counsel abides by the ethical duties covering conflicts, and the defense is confident there is no conflict here. If the Court were to proceed with a judicial inquiry, then at minimum, an evidentiary hearing is warranted to cross-examine Sam Leslie, Carolyn Dye, and other witnesses to the Government's underlying claims about the Tuna Canyon property sale.

Finally, undersigned counsel notes that the Government's position regarding any purported conflict between Mr. Chrismas and his counsel due to his payment to counsel is troubling and in violation of Mr. Chrismas's Sixth Amendment right to counsel. *Luis v. United States*, 578 U.S. 5, 10 (2016) ("pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment"). To be sure, the Government's position is that when a defendant uses untainted funds to pay a defense attorney instead of paying a private party who has a yet-to-be-enforced judgment, an inherent conflict arises because defense counsel could be a witness to, and beneficiary of, the funds. In other words, the Government, though not restraining the defendant's assets by law, has restrained them by using a purported conflict as a sword. So, for example, where a tax defendant uses untainted and unseized funds to retain counsel instead of paying the funds to the IRS, the Government's position is that defense counsel will have a conflict in the matter. Defense counsel asked the prosecutors whether there was any other case they could provide where the Government had taken a similar position; they provided none. Maitia Decl. ¶ 10.

* * *

---

[4] Immediately after the May 9, 2024 bond revocation hearing, FBI Agent Grove served D.K. (who was at the hearing) with a grand jury subpoena for June 6, 2024, *after* trial here. Maitia Decl. ¶ 6. This is a scare tactic by the Government to further disrupt the defense through intimidation and, apparently, a new vindictive prosecution.

Because the sale of the Tuna Canyon property is irrelevant to any material issue at trial, the Court should exclude any evidence relating to the transaction. And, because no conflict inquiry is needed, the Court should decline the Government's request.

Dated: May 21, 2024

Respectfully submitted,
Summa LLP

 /s/ Megan A. Matia
Megan A. Maitia
Jennifer L. Williams

Attorneys for Def. Douglas J. Chrismas

8
DEFENDANT'S OPPOSITION TO GOVT'S 404(B) MIL AND REQUEST FOR JUDICIAL INQUIRY (DKT. 144)